UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
(DIVISION 4 – MINNEAPOLIS)

| | |
|---|---|
| HODON HASSAN,<br><br>        Plaintiff,<br><br>v.<br><br>TRANS UNION LLC,<br><br>        Defendant. | Case No.: 0:21-cv-01884<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. FCRA, 15 U.S.C. §1681 et seq. |

Plaintiff Hodon Hassan ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq. against Defendant Trans Union LLC ("Trans Union"):

## I.   INTRODUCTION

1. Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq. against Defendant Trans Union LLC, a consumer reporting agency for reporting inaccurate information on Plaintiff's consumer reports. "Consumer reports" under 15 U.S.C. §1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

1

## II. JURISDICTION AND VENUE

2. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1681.

3. Venue in this District is proper to 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

4. Defendants transact business here; as such, personal jurisdiction is established.

## III. PARTIES

5. Plaintiff Hodon Hassan is a natural person residing in the city of Brooklyn Park, Hennepin County, Minnesota.

6. Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. §1681a(c).

7. Defendant Trans Union is a "consumer reporting agency", as defined in 15 U.S.C. §1681a(f). Upon information and belief, Defendant regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports", as defined in 15 U.S.C. §1681a(d), to third parties. Trans Union's principal place of business is located 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through their registered agent, Prentice Hall Corporation, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

8. Upon information and belief, Defendant Trans Union disburses consumer reports to third parties under contract for monetary compensation.

9. At all relevant times, Defendant Trans Union acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

10. Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

### IV. FACTUAL BACKGROUND

11. Plaintiff in corporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

12. The United States Congress decided that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

13. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

14. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

15. Defendant Trans Union reports consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

16. Defendant Trans Union's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

17. Defendant Trans Union obtains consumer information from various sources, including furnishers who provide consumer information to the CRAs, and information the CRAs independently source themselves or through third party providers/vendors or repositories, including computerized reporting services, like PACER.

18. The diligence Defendant Trans Union exercises in recording consumer bankruptcy filings is not replicated in their reporting of the effects of bankruptcy proceedings and orders upon certain accounts, including accounts that are reaffirmed during a consumer's bankruptcy.

19. Consequently, Defendant Trans Union routinely reports inaccurate, incomplete, outdated, and materially misleading information about consumer after they have been discharged from bankruptcy, without verifying or updating the information as required

4

by §1681e(b), despite possessing information that indicates their reporting is inaccurate.

20. The vast majority of financial institutions (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant Trans Union) to make lending decisions. Those institutions also use FICO scores and other proprietary third-party algorithms—"scoring" models—to interpret the information in a consumer report, which is based on the amount of reported debt, payment history, and a date of delinquencies contained in Trans Union's consumer report.

21. FICO and other third-party algorithms use variables or "attributes" derived from the consumer's report to calculate a "credit score", which is a direct reflection of a consumer's creditworthiness.

22. The information reported by Defendant Trans Union contributes to consumer credit worthiness, including their FICO scores, which are calculated using information contained in Defendant Trans Union's consumer reports.

23. FICO scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

24. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed.

25. The more severe, recent and frequent late payments are, the greater the harm to the FICO score.

26. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist.

27. However, after a delinquent account has been remedied, a consumer's FICO score may increase so long as the account stays current.

28. Defendant Trans Union voluntarily obtained and reported Plaintiff's consumer bankruptcy information in her individual account tradelines and the Public Records section of Plaintiff's consumer report.

29. Defendant Trans Union is well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

30. Defendant Trans Union is also aware of the effect of a reaffirmation agreement, which allows a consumer to remain liable for the debt and excludes the debt from the bankruptcy discharge.

31. Information regarding whether a debt has been reaffirmed or successfully challenged through and adversary proceeding is retrievable from the same sources Defendant Trans Union obtains the bankruptcy case information.

32. Additionally, Defendant Trans Union receives actual notice of reaffirmation agreements from furnishers of account/tradeline information.

33. Defendant Trans Union also receives constructive notice of reaffirmation agreements from furnishers of tradeline information that provide data indicating that a consumer

is continuing to make regular payments on pre-bankruptcy debt after receiving their discharge order.

34. In this case, Plaintiff also specifically notified Defendant Trans Union that the debt was reaffirmed, but the CRAs rejected this specific notice, despite also possessing or having access to information that confirmed the debt was in fact reaffirmed.

35. Although Defendant Trans Union was notified of its inaccurate reporting and had the information necessary to correctly report Plaintiff's Account, Trans Union failed to verify the information.

36. Instead, Trans Union followed unreasonable procedures that allowed it to reject information provided by the furnisher.

37. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant Trans Union for its inaccurate reporting following a consumer bankruptcy.

38. Therefore, Defendant Trans Union is on continued notice of its inadequate post-bankruptcy reporting procedures, including those that result in inaccurate account and payment statuses, both before and after receiving a dispute from the consumer.

*Allegations Specific to the Credit Reporting of Plaintiff*

39. In or around April of 2015, Plaintiff obtained a mortgage loan from Round Point Mortgage ("Round Point"), account number 596200* (the "Account").

40. On or about July 12, 2019, Plaintiff filed for voluntary bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota, petition number 19-42104.

41. On or about September 9, 2019, Plaintiff reaffirmed Plaintiff's obligations under the Account whereby Plaintiff remained personally liable/responsible for continued payment on the Account. The Account was therefore *not* included in Plaintiff's bankruptcy discharge.

42. Plaintiff received a discharge in bankruptcy court on or about October 9, 2019.

43. After Plaintiff's bankruptcy was discharged, Plaintiff was eager to obtain a "fresh start".

44. Sometime after Plaintiff's bankruptcy discharge, Plaintiff obtained her Trans Union consumer report to ensure that her credit account tradelines and bankruptcy were reporting accurately.

45. Plaintiff learned that Defendant Trans Union was inaccurately reporting Plaintiff's reaffirmed Account as having been included in Plaintiff's bankruptcy, and subject to bankruptcy coding that conveys to creditors/lenders that the Account was discharged or non-current/non-paid.

46. However, before filing for bankruptcy, Plaintiff made payments on the Account, and she continued to make timely payments after her discharge.

47. Plaintiff reaffirmed the Account during bankruptcy, remaining personally liable for the obligation and the Account (debt) was indisputably not discharged. Plaintiff did this to maintain some of her credit history and to rebuild/re-establish credit through timely monthly payments on the reaffirmed Account.

48. Defendant Trans Union's reporting was therefore patently false and materially misleading, as the Account as reaffirmed and not discharged by Plaintiff's bankruptcy and Plaintiff continued to make timely monthly payments on the Account.

49. Defendant Trans Union failed to report the Account's accurate payment history, ongoing payments, and decreasing balance.

### *Plaintiff's Disputes*

50. Assuming the error on Trans Union also existed on Equifax and Experian, on or about January 29, 2020, Plaintiff sent certified letters to Experian, Equifax and Trans Union disputing their inaccurate reporting of the Account.

51. The letters specifically advised that Plaintiff did not include the Account in her bankruptcy, remained personally obligated for the Account, and continued to make regular payments on the Account.

52. Upon information and belief, Experian, Equifax, and Trans Union received Plaintiff's dispute letters.

53. Upon information and belief, Experian, Equifax, and Trans Union forwarded Plaintiff's disputes to Round Point within five (5) business days of receipt.

54. Alternatively, Trans Union failed to forward Plaintiff's dispute to Round Point.

55. Plaintiff did not receive responses to her disputes from any of the CRAs.

56. On Plaintiff's August 6, 2020 Trans Union consumer report, Trans Union reported that the Account had been "Included in Bankruptcy" with the "Last Payment Made: 09/13/2019" and "Date Closed: 10/11/2019.".

57. Trans Union was not reporting Plaintiff's positive history and continued payments on the Account.

58. Upon information and belief, Trans Union did not investigate Plaintiff's dispute and merely forwarded an automated dispute form to Round Point. Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and information known by Trans Union through information furnished by Round Point.

59. Alternatively, Trans Union did not forward Plaintiff's dispute to Round Point.

60. Trans Union's reporting of Plaintiff's Account was patently inaccurate.

61. Plaintiff's August 6, 2020 Equifax consumer report was correctly reporting the Account as current with Plaintiff's positive payment history and decreasing balances.

62. Plaintiff's October 26, 2020 Experian consumer report was also correctly reporting the Account as current with Plaintiff's positive payment history and decreasing balances.

63. Upon information and belief, following Plaintiff's disputes, Round Point furnished the correct Account information to Trans Union (as it clearly did to Equifax and Experian), but Trans Union rejected or otherwise overrode the information provided by Round Point.

64. Alternatively, Trans Union failed to forward an ACDV to Round Point, which is an unreasonable investigation under the FCRA.

*Plaintiff's Damages*

65. Had Defendant Trans Union accurately reported the Account as a current and open account with Plaintiff's perfect payment history, Plaintiff's credit score and creditworthiness would have been better.

66. Plaintiff applied for credit with Capital One in March 2021 and was denied credit due to Defendants' inaccurate reporting, which was published to Capital One in its review of Plaintiff's application.

67. As a direct result of Trans Unions' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

68. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, loss of sleep, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

69. Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

### V.     COUNT I
### Defendant Trans Union
### (Violations of the FCRA, 15 U.S.C. §1681 et seq.)

70. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

71. The FCRA requires consumer reporting agencies, like Trans Union, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. §1681e(b).

72. Defendant Trans Union negligently and/or willfully violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report.

73. Additionally, Defendant Trans Union negligently and/or willfully violated 15 U.S.C. §1681e(b) by failing to report accurate information when placed on notice that the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by Defendants or reasonably to Defendants.

74. Upon information and belief, Defendant Trans Union regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties.

75. Upon information and belief, Defendant Trans Union voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy's filing and bankruptcy discharge.

76. Defendant Trans Union inaccurately reported Plaintiff's reaffirmed Account as included in Plaintiff's bankruptcy when Plaintiff continued to make timely payments on the Account, and remained liable for the Account, which was excluded from her discharge.

77. Defendant Trans Union possessed information that indicated Plaintiff reaffirmed the Account.

78. Further, information concerning reaffirmation agreements is reasonably available from the same sources of consumer bankruptcy information Defendant Trans Union procures.

79. Defendant Trans Union knew or should have known of its obligations under the FCRA. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Defendant Trans Union from which they are on notice of its unreasonable procedures concerning the reporting of debts during and after bankruptcy, including reaffirmed debts.

80. Even after Plaintiff notified Defendant Trans Union of the inaccurate information it included in Plaintiff's credit file, Trans Union continued to inaccurately report the reaffirmed Account as "included in bankruptcy", despite notice that the Account was reaffirmed, and the ability to independently confirm the information detailed in Plaintiff's dispute.

81. Defendant Trans Union failed to follow reasonable procedures, as 15 U.S.C. §1681e(b) requires, by unreasonably rejecting the results of Round Point's investigation of Plaintiff's dispute and inaccurately reporting the Account as discharged.

82. Alternatively, Trans Union Trans Union failed to follow reasonable procedures by completely failing to forward Plaintiff's dispute to Round Point.

83. Defendant Trans Union also failed to follow reasonable procedures, as 15 U.S.C. §1681e(b) requires, by failing to verify that Plaintiff reaffirmed the Account following Plaintiff's dispute, which information is reasonably available from the same sources Trans Union procures consumer bankruptcy information.

84. When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information or delete the disputed information from consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. §1681i(a)(2)(A).

85. When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer:".

86. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five (5) business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer". 15 U.S.C. §1681i(a)(2)(A).

87. Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. §1681e(b) requires, Defendant Trans Union violated the FCRA by failing to perform a reasonable reinvestigation of the disputed information even after Plaintiff notified them of their inaccurate reporting of the Account.

88. Defendant Trans Union's violations of 15 U.S.C. §1681i include, but are not limited to the following:
    a. Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed
    b. Failing to consider all relevant information while investigating Plaintiff's dispute

    c. Failing to include all relevant information when notifying Round Point of Plaintiff's dispute, or alternatively failing to forward Plaintiff's dispute to Round Point.

89. Instead of reasonably reinvestigating Plaintiff's dispute, Defendant Trans Union continued to report the reaffirmed Account as "included in bankruptcy".

90. Defendant Trans Union's acts, described above, were done willfully and knowingly, or alternatively negligent.

91. Defendant Trans Union's inaccurate reporting damaged Plaintiff's creditworthiness.

92. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendant Trans Union inaccurately reporting the Round Point Account, and otherwise failing to report that the debt was reaffirmed.

93. Plaintiff also suffers interference with daily activities caused by other harm, including, but not limited to, emotional distress, disturbance of sleep, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

94. Defendant Trans Union is a direct and proximate cause of Plaintiff's damages.

95. Defendant Trans Union is a substantial factor in Plaintiff's damages.

96. As a result of the foregoing violations of the FCRA, Defendant Trans Union is liable to for actual damages, statutory damages, punitive damages, attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI. PRAYER OF RELIEF

**WHEREFORE,** Plaintiff Hodon Hassan respectfully requests judgment be entered against Defendant Trans Union for the following:

A. Declaratory judgment that Defendant violated the FCRA.

B. Actual damages pursuant to 15 U.S.C. §1681n(a)(1) or §1681o(a)(1)

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)

D. Punitive damages pursuant to 15 U.S.C. §1681n(a)(2)

E. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3) and 1681o(a)(2)

F. Awarding Plaintiff any pre-judgment and post-judgment interested as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

RESPECTFULLY SUBMITTED this 20th day of August 2021.

s/ Jenna Dakroub
Jenna Dakroub
Bar Number (MN): 0401650
Attorney for Plaintiff Hodon Hassan
PRICE LAW GROUP, APC
8425 N. 85th Way
Scottsdale, AZ 85258
Telephone: (818) 600-5513
Fax: (818) 600-5413
Email: jenna@pricelawgroup.com